**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No.  10-cv-01115-WJM-CBS

LAURA L. HARPER,

      Plaintiff,

v.

MANCOS SCHOOL DISTRICT RE-6; and
BRIAN HANSON, in his individual capacity,

      Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

In this action, Laura L. Harper brings claims against Mancos School District and

Brian Hanson arising out of the non-renewal of her employment as secondary principal

and K-12 administrator.  Before the Court is the District and Hanson's joint Motion for

Summary Judgment ("Motion").  (ECF No. 50.)  For the reasons set forth below, the

Motion is GRANTED.

## I.  FACTUAL BACKGROUND[1]

Plaintiff Laura Harper ("Plaintiff") was employed by Defendant Mancos School

District ("District") as K-12 administrator and secondary school principal for the school

years of 2007-08 and 2008-09.  (Pl.'s Aff. (ECF No. 61-7) ¶ 2.)  In April 2009,

Superintendent Brian Hanson approached Plaintiff about the renewal of her contract for

the 2009-10 school year.  (Statement of Material Facts ("SOF") ¶ 7.)  He informed her

---

[1]  On the instant Motion, the Court must view the facts in the light most favorable to
Plaintiff Harper. *McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).  Thus, to the extent any
relevant facts are disputed, the Court includes Plaintiff's version in its recitation.

that he was going to recommend that her contract be renewed, but that he was worried that the vote would not be unanimous.  (*Id.*)  He asked Plaintiff if she would stay on if the vote was not unanimous and she replied that she would.  (Pl.'s Aff. ¶ 4.)  There is no written recording of this conversation.  (SOF ¶ 9.)

On April 15, 2009, the District's School Board ("Board") adopted Hanson's recommendation that Plaintiff's contract be renewed.  (SOF ¶ 12.)  The Board meeting minutes for April 15, 2009 state:

> C.      Approve Principal Contracts
>
> . . .
>
> 2.  Laura Harper
>
> **Motion** by Mr. Whalen, seconded by Mr. Boyer to approve the recommendation of Laura Harper for the position of Secondary Principal for the 2009/10 school year.  AYE: Mr. Boyer, Mr. Hunter, Ms. Miller, and Mr. Whalen.  NO: Mr. Kloster.  Motion carried 4-1.

(ECF No. 50-2 at 11.)

After the April 15 board meeting, Hanson informed Plaintiff of the Board's vote in favor of renewing her contract.  (Pl.'s Dep. (ECF No. 50-3) pp. 50-51.)  Plaintiff responded that she looked forward to working with Hanson in the upcoming school year and working with him to develop new programs.  (*Id.* at 51.)

After the Board's vote, Plaintiff and Hanson undertook the process of filling the open staff positions for the 2009-10 school year.  (SOF ¶ 16.)  There was an opening for a special education teacher and Plaintiff suggested to her former colleague, Doug LaMunyon, that he apply.  (Pl.'s Dep. at 77.)  LaMunyon applied for the position and, as

part of his review of LaMunyon's application, Hanson called a number of LaMunyon's

former co-workers and supervisors.  Based on these references, Hanson decided that

LaMunyon should not be interviewed.  (SOF ¶¶ 20-21.)  Hanson informed Plaintiff that

she was not to interview LaMunyon for the position and declined to give her a reason

for this decision.[2]  (Pl.'s Aff. ¶ 13.)

As the dates for interviewing approached, LaMunyon contacted Plaintiff about

whether he was being considered for the job.  (*Id.* ¶ 19.)  According to Plaintiff, she told

LaMunyon that Hanson had decided he would not get an interview and that she "had to

abide by that decision."  (*Id.*)

LaMunyon then contacted Tom Whalen, a member of the Board, and indicated

that he was upset about not being offered an interview.  (SOF ¶¶ 25-26.)  The next day,

Whalen contacted Hanson about LaMunyon's call.  (SOF ¶ 28.)  Whalen told Hanson

that LaMunyon was upset about not being offered an interview and that Plaintiff had

told LaMunyon that he was not going to be interviewed.  (*Id.*)

On May 1, 2009, without speaking to Plaintiff about the situation,[3] Hanson

contacted the Board.  (SOF ¶ 30.)  He informed the Board members that Plaintiff had

---

[2]  Hanson claims that he told Plaintiff that references had said that LaMunyon liked to "stir the pot", was not a good worker, and generally someone you did not want to hire.  Plaintiff disputes that Hanson told her this information.  Since the Court must take all facts in the light most favorable to Plaintiff, the Court must assume that Hanson provided no reason for why he did not want to interview LaMunyon.  In any event, this disputed fact is not material to the Court's analysis of Plaintiff's claims.

[3]  Although, as discussed below, the law dictates that summary judgment be granted in favor of Defendants, the Court is appalled by how Plaintiff was treated in this case.  This case is a textbook example of the inherent unreliability of hearsay and why conversations that are passed through multiple people are not admissible evidence.  Had Hanson bothered to sit down and speak face-to-face with his employee of nearly two years, and get her version of what she did and did not disclose to LaMunyon, this entire situation may have been avoided.

revealed "confidential information" to LaMunyon and that he was debating how to proceed with her employment.  (SOF ¶ 31.)  Hanson also reached out to two other superintendents seeking their advice about how to handle the situation.  (Hanson Dep. (ECF No. 61-1) pp. 145-46.)  In conversations with these other superintendents, he explained that "his principal" had disclosed "confidential information" and asked what they would do.  (*Id*. at 147.)

After mulling it over for a week, Hanson e-mailed the Board with his opinion that it was time to "let [Plaintiff] go."  (SOF ¶ 33.)  On May 13, 2009, Hanson gave Plaintiff a letter informing her that she was being placed on administrative leave with pay for the rest of the school year.  (SOF ¶ 34.)  Plaintiff claims that Hanson told her that she was "dismissed".  (Pl.'s Aff. ¶ 20.) Plaintiff was paid for the rest of the school year but was not allowed to return to campus other than to pick up a few of her belongings.  (*Id*. ¶ 22.)

On May 21, 2009, the Board voted unanimously to adopt a resolution that rescinded its earlier approval of Hanson's recommendation that Plaintiff's contract be renewed.  The resolution also stated that Plaintiff would not be re-employed for the 2009-10 school year.  (ECF No. 50-2 at 21.)

Plaintiff did not look for alternate employment until after the 2008-09 school year was over.  (Pl.'s Dep. at 147.)  Since May 2009, she has looked for employment but has been unable to get another job in education.  (Pl.'s Aff. ¶ 23.)

**B.    Procedural History**

Plaintiff filed the instant action on May 13, 2010.  (ECF No. 1.)  In lieu of filing an

answer, Defendants filed a Motion to Dismiss for failure to state a claim.[4]  (ECF No. 8.)

Defendants argued: (1) that any oral contract for the 2009-10 school year was void

pursuant to the statute of frauds; (2) the District's nonrenewal of Plaintiff's contract

complied with the Teacher Employment, Compensation, and Dismissal Act of 1990

("TECDA"); (3) Plaintiff was not denied any property right in her employment for 2008-

09 because she was placed on leave with pay; (4) Plaintiff had no property right in

employment for the 2009-10 school year; (5) Plaintiff had failed to allege a liberty

deprivation; (6) Hanson was entitled to qualified immunity; (7) because Plaintiff had

failed to show an enforceable contract, her intentional interference with contractual

relations claim failed as a matter of law; and (8) because the Board's non-renewal of

Plaintiff's contract complied with TECDA, her claim for promissory estoppel failed as a

matter of law.  (*Id*.)

The case proceeded through discovery, which closed on April 4, 2011.

Defendants filed their Motion for Summary Judgment on May 5, 2011.  (ECF No. 50.)  It

raises the same arguments raised in the Motion to Dismiss.  Both of these motions are

currently before the Court.

## II.  LEGAL STANDARD

Because the issues raised in the two motions are the same, and the case has

proceeded through discovery, the Court finds that the Motion to Dismiss is essentially

moot.  Accordingly, the Court will consider the Defendants' arguments in the framework

---

[4]  Defendants' Motion to Dismiss purports to be filed pursuant to Fed. R. Civ. P. 12(b)(5) but mentions nothing about service of process.  Thus, the Court presumes that Defendants intended to move pursuant to 12(b)(6) for failure to state a claim upon which relief could be granted, and will consider the motion accordingly.

of the Motion for Summary Judgment.

In a case such as this where the plaintiff asserts state law claims and the federal court has jurisdiction based on the diversity of the parties, "a federal court applies the substantive law of the state, but applies federal procedural law." *Herrera v. Lufkin Ind., Inc.*, 474 F.3d 675, 683 (10th Cir. 2007).

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim or affirmative defense. *In re Ribozyme Pharms., Inc. Sec. Litig.*, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002). By contrast, if the movant "does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (internal quotations omitted).

The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P. 56(e). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the

evidence in the light most favorable to the non-moving party.  *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III.  DISCUSSION

Plaintiff brings claims for: (1) breach of contract against the District; (2) violation of Plaintiff's right to due process pursuant to 42 U.S.C. § 1983 against the District and Hanson in his individual capacity; (3) intentional interference with contractual relations against Hanson individually; and (4) promissory estoppel against the District.  (ECF No. 1.)  Defendants move for summary judgment on all counts.  (ECF No. 50.)  The Court will examine each claim in turn below.

## A.      Breach of Contract

It has long been the law in Colorado that a party attempting to recover on a claim for breach of contract must prove the following elements:  (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.  *Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Defendants argue that Plaintiff cannot show a trial-worthy issue as to whether she had an enforceable contract for the 2009-10 school year.

### 1.      Whether the parties formed a contract

Defendants argue that there was no contract in this case because there was no offer and acceptance.  An enforceable contract requires mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration. *Denver Truck Exchange v. Perryman*, 134 Colo. 586, 307 P.2d 805

(1957).  An offer is a manifestation by one party of a willingness to enter into a bargain.

Restatement (Second) of Contracts 24 (1979).  The terms of the offer must be

sufficiently definite that the promises and performances of each party are reasonably

certain.  *Stice v. Peterson*, 144 Colo. 219, 224, 355 P.2d 948, 952 (1960); *see also*

*Sheridan Redevelopment Agency v. Knightsbridge Land Co.*, 166 P.3d 259, 262 (Colo.

App. 2007). An acceptance is a manifestation of assent to the terms of the offer and,

unless otherwise specified in the offer, the offeree may accept by promising to perform

or by performing.  Restatement (Second) of Contracts § 32 (1979).

### a.    Pre-April 15, 2008 Board meeting

Prior to the April 15, 2008 Board meeting, Hanson told Plaintiff that he was going

to recommend that her contract be renewed.  He asked Plaintiff if she would stay on

with the District if the Board's vote to retain her was not unanimous and she responded

that she would.  (SOF ¶ 7.)

Plaintiff argues that this conversation constituted an offer and acceptance of

employment.  Colorado has adopted the portion of the Second Restatement of

Contracts that states: "A manifestation of willingness to enter into a bargain is not an

offer if the person to whom it is addressed knows or has reason to know that the person

making it does not intend to conclude a bargain until he has made a further

manifestation of assent."  Restatement (Second) of Contracts § 26 (1981) (quoted in

*Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128, 133 (Colo. App. 2009)).

Plaintiff has admitted that, at the time of her conversation with Hanson, she knew the

Board still needed to approve her contract.  (SOF ¶ 11.)  Because Plaintiff knew that

the Board needed to take further action before the bargain could be concluded, the

conversation between Hanson and Plaintiff in advance of the April 15, 2008 Board

meeting did not constitute an offer.

### b.    Post-April 15, 2008 Board meeting

At the April 15, 2008 Board meeting, the Board voted 4-1 to approve the renewal

of Plaintiff's contract.  (SOF ¶ 12.)  The following day, Hanson informed Plaintiff of the

Board's vote and she responded that she looked forward to working with him the

following year.  (SOF ¶ 14.)  Given the prior conversations between Hanson and

Plaintiff, this exchange constituted an offer and acceptance of a contract.  *See Aspen*

*Highlands Skiing Corp. v. Apostolou*, 866 P.2d 1384, 1387 (Colo. 1994) (employment

contracts do not require "every formality attending commercial contractual

arrangements . . . as long as the fundamental elements of contract formation are

present.").

Defendants argue that this was not offer and acceptance because no material

terms were discussed.  However, as Plaintiff has pointed out, the common material

terms of an employment contract (*e.g.*, length of contract, salary, benefits) were

established by statute or otherwise known to both parties.  For example, the Board

adopted a salary table and set the length of the school year.  Thus, the parties were not

required to discuss these factors to have a "meeting of the minds" on all material terms.

*Pierce v. Marland Oil Co.*, 278 P. 804, 806 (Colo. 1929) (all material terms are not

required to be in the same document as long as there is a "meeting of the minds on

essential conditions of the contract.").  At the time of their conversation following the

April 15 Board meeting, Hanson and Plaintiff had agreed to all of the material terms of

her employment contract for the 2009-10 school year.  Accordingly, the Court finds that

the parties had an oral contract renewing Plaintiff's employment for the 2009-10 school

year.

      2.   <u>Enforceability of the Contract</u>

Defendants contend that, even if an oral contract was formed, it is unenforceable

because Colorado law requires that all teacher and administrator contracts be in writing.

Colorado law requires both principal and teacher contracts to be in writing.[5]

Colo. Rev. Stat. § 22-32-126 ("The board of education may employ <u>through written</u>

<u>contract</u> public school principals who shall hold valid principal licenses or authorizations

and who shall supervise the operation and management of the school and such

property as the board shall determine necessary."); Colo. Rev. Stat. § 22-63-202

("Except for part-time or substitute teacher, every employment contract entered into by

any teacher or chief administrative officer for the performance of services for a school

district <u>shall be in writing</u>.") (emphasis added).  Indeed, Plaintiff acknowledges that

"districts are required to furnish both [teachers and administrators] with written

contracts, and those contracts must contain certain statutory provisions."  (ECF No. 61

at 21.)

Therefore, to have an enforceable employment contract as a teacher or

administrator under Colorado law, Plaintiff must show that she had a written contract for

_____

[5]  The parties dispute whether Plaintiff was an administrator or a teacher (or both) under
Colorado law.  The Court finds this distinction immaterial to the question here presented
because the law requires that both teacher and administrator contracts be in writing.

the 2009-10 school year.  Plaintiff contends that the Board's minute entry confirming its vote on her renewal, coupled with statutory salary requirements, form her written contract.  (ECF No. 61 at 16-17.)  The Board meeting minutes for April 15, 2009 state: "Approve Principal Contracts . . . Motion by Mr. Whalen, seconded by Mr. Boyer to approve the recommendation of Laura Harper for the position of Secondary Principal for the 2009/10 school year.  AYE: Mr. Boyer, Mr. Hunter, Ms. Miller, and Mr. Whalen. NO: Mr. Kloster.  Motion carried 4-1."  (ECF No. 50-2 at 11.)

The Court finds that the Board's minutes do not constitute a written contract for two reasons.  First, as discussed above, at the time of the Board's vote, there had been no offer or acceptance of the contract.  The Board's meeting minutes reflect an intent to enter into a contract with Plaintiff rather than a ratification of an existing agreement.

Additionally, every written teacher or administrator contract must contain a provision requiring the employee to provide the District with thirty days notice of her intent to terminate the contract.  Colo. Rev. Stat. § 22-63-202(b).  All written teacher and administrator contracts also must include a provision requiring the employee to accept the contract within thirty days.  *Id*. at 202(b.5).  Finally, all written teacher and administrator contracts are required to contain a provision outlining damages in the event that an employee does not comply with the termination procedure.  *Id*. at 202(c). The Board meeting minutes do not contain any of these required statutory provisions. On this additional basis, the Board meeting minutes do not satisfy the writing requirements set forth in the applicable Colorado statute respecting teacher and administrator contracts.

Plaintiff argues that her contract was finalized when the Board voted to renew

11

same on April 15, 2009, and that the formation of the written contract was "a ministerial act" that does not prevent her from enforcing the contract.  (ECF No. 61 at 18.)  However, she fails to cite any cases that excuse her from the writing requirement in Section 22-63-202 simply because reducing an agreement to writing is "a ministerial act."  The Court cannot ignore the plain language and intent of the statute requiring that all teacher and administrator contracts be in writing.

Plaintiff also argues that the District is equitably estopped from denying the existence of her contract because the issuance of her written contract was solely under its control.  (ECF No. 61 at 16.)  Plaintiff cites *General Accident Fire & Life Assurance Corporation v. Mitchell*, 259 P.2d 862 (Colo. 1953), in support of this contention.  The Court has reviewed *Mitchell* and does not find any support therein for Plaintiff's argument.[6]  Thus, Plaintiff has cited to the Court no authority for her argument that the District is equitably estopped from challenging the validity of her oral contract because it was responsible for preparing a written contract.

Colorado law explicitly requires that all teacher and administrator contracts be in writing.  Thus, to meet her burden on summary judgment with respect to the first element of her breach of contract claim—the existence of an enforceable

---

[6]  In *Mitchell*, the insurance company defended its insured under a reservation of rights.  When judgment was entered against the insured, the plaintiff sought to enforce that judgment against the insurance company.  The insurance company protested and filed suit akin to a declaratory judgment action asking the court to remove the plaintiff's garnishment.  The only mention of estoppel is the holding that when an insurance company defends an insured under a reservation of rights, "neither estoppel nor waiver will preclude the insurer from asserting any right that it may have under its insurance policy in any action brought by the insured himself or the insured's judgment creditor in garnishment proceedings."  *Id.* at 868.  Nothing in *Mitchell* supports the proposition that the preparer of contractual documents is equitably estopped from denying the existence of a contract when such documents have not been prepared.

contract—Plaintiff is required to show a genuine dispute of fact as to whether she had a written contract for the 2009-10 school year.  The Court finds that Plaintiff has failed to meet this burden and, therefore, summary judgment on Plaintiff's breach of contract claim is appropriate.

**B.     Due Process**

Plaintiff brings a claim under 42 U.S.C. § 1983 for violation of her due process rights against the District and Hanson individually.  Plaintiff alleges that she was denied the property interest in her continued employment with the District without an opportunity to be heard.  Plaintiff also alleges that her liberty interest in her good name and reputation was violated when she was terminated without a name-clearing hearing. The Court will address each of these arguments below.

1.     Property Interests

A plaintiff asserting a procedural due process claim must establish: (1) the existence of a constitutionally cognizable liberty or property interest; and (2) a deprivation of that interest without an appropriate level of process or procedural safeguards.  *See Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006).  "[T]he range of interests protected by procedural due process is not infinite." *Bd. of Regents v. Roth*, 408 U.S. 564, 570 (1972).  To be constitutionally cognizable, "[a] property interest must be specific and presently enforceable."  *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1569 (10th Cir. 1993).  Indeed, when asserting a procedural due process claim based on the deprivation of a benefit, like employment, the plaintiff "'clearly must have more than an abstract need or desire for it.  He must have more

than a unilateral expectation of it.  He must have a legitimate claim of entitlement to it.'"

*Id.* (quoting *Roth*, 408 U.S. at 577).  "Furthermore, property interests are not created by

the Constitution itself; rather, they are derived from independent sources such as state

laws, administrative rules, or 'understandings that secure certain benefits and that

support claims of entitlement to those benefits.'" *Heutzenroeder v. Mesa County Valley

Sch. Dist.*, 391 F. App'x 688, 691-92 (10th Cir. 2010) (quoting *Roth*, 408 U.S. at 577).

In the public employment context, the Supreme Court has recognized that a

public employee may have a constitutionally cognizable property interest in continued

employment if the employee is tenured pursuant to state law or if "there is a clearly

implied promise of continued employment."  *Roth*, 408 U.S. at 577 (citing *Connell v.

Higginbotham*, 403 U.S. 207 (1971)).

It is undisputed that Plaintiff received no due process before the Board chose not

to renew her contract.  Without speaking to Plaintiff about any issues or concerns, or

getting her version of the operative events, Hanson gave Plaintiff a letter placing her on

administrative leave.  (ECF No. 50-2 at 17.)  Hanson then went to the Board and asked

it to adopt a resolution rescinding its prior approval of the renewal of her contract and

resolving that Plaintiff not be reemployed for the 2009-10 school year.  (ECF No. 50-2

at 18.)  Plaintiff was offered no opportunity to address the Board before it voted

unanimously to adopt the suggested resolution.  (ECF No. 50-2 at 21.)  Thus, if Plaintiff

had a protected property interest, there is clearly no doubt that she was deprived of that

interest without due process.

### a.   Placement on paid leave for remainder of 2008-09 school year

Defendants contend that Plaintiff cannot show a due process violation for the 2008-09 school year because she was paid the full amount due under her contract. (ECF No. 50 at 16-17.)  Plaintiff contends that she was "dismissed" prior to the end of the school year without a hearing and, therefore, had her due process rights violated. (ECF No. 61 at 26.)  Plaintiff does not dispute the fact that she was paid the full amount required under her written contract for the 2008-09 school year.  (SOF ¶ 37.)

Addressing whether an administrator who was placed on paid leave without a hearing had her due process rights violated, the District of Kansas held: "Plaintiff has no property right to teach *per se*.  He has a legitimate claim of entitlement to employment. But his employment has not ceased.  He is still being paid.  Therefore, no property right has been infringed." *Pierce v. Engle*, 726 F. Supp. 1231, 1237 (D. Kan. 1989) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)).  The Tenth Circuit has also stated that a principal has no "constitutionally cognizable interest in remaining as the principal." *Heutzenroder*, 391 F. App'x at 691. Rather, the principal's only constitutionally cognizable interest was in the duration of employment and her promised salary.  *Id*.

In this case, Plaintiff was employed (though placed on administrative leave) for the duration of her contract for the 2008-09 school year and was paid the full amount due to her under that contract.  Accordingly, she was not deprived of any constitutionally cognizable property interest insofar as the remainder of the 2008-2009 academic year is concerned.

**b.   2009-10 School Year**

15

Defendants argue that Plaintiff was a probationary teacher and, therefore, had no property interest in the renewal of her contract.  (ECF No. 50 at 17.)  It is well-established that probationary teachers do not have a property interest in their continued employment.  *See Feldewerth v. Joint Sch. Dist 28-J*, 3 P.3d 467, 470-71 (Colo. App. 1999).  Plaintiff contends that she was an administrator and not a probationary teacher and, therefore, had a property interest in her continued employment.  (ECF No. 61 at 19-21.)  However, "it is well-settled that [Colorado statutory] provisions do not provide tenure or other similar protections for principals or other administrators."  *Heutzenroder*, 391 F. App'x at 692 (citing *Draper v. Sch. Dist. No. 1*, 486 P.2d 1048, 1049 (Colo. 1971)).  Thus, regardless of whether she was a probationary teacher or administrator, Plaintiff did not have a "clearly implied promise" of continued employment under Colorado law.

Accordingly, Plaintiff had no statutorily-created property interest in her employment for the 2009-10 school year.  Plaintiff argues that she had a contractually-based property interest in her continued employment.  She contends that she had an implied contract based on the Board's 4-1 vote in favor of approving her contract, coupled with her subsequent conversation with Hanson in which she conveyed her intent to continue working with him the following year.  The Supreme Court has held: "A property interest in employment can, of course, be created by ordinance, or by an implied contract.  In either case, however, the sufficiency of the claim of entitlement must be decided by reference to state law."  *Bishop v. Wood*, 426 U.S. 341, 344 (1976).  Any contract that fails to comply with statutory requirements is void under Colorado law.

*See Normandy Estates Metro. Recreation Dist. v. Normandy Estates Ltd.*, 534 P.2d

805, 807 (Colo. App. 1975).  In Colorado, all teacher and administrator employment

contracts must be in writing.  Thus, to the extent Plaintiff had an implied contract for

continued employment with the District, such contract was void and could not convey

upon her a protected property interest.

Accordingly, Plaintiff  has failed to show a material factual dispute as to whether

she had a protected property interest in her employment for the 2009-10 school year

and summary judgment in favor of the District is appropriate on this aspect of her due

process claim.

    2.    <u>Liberty Interest</u>

Plaintiff also contends that she was deprived of a protected liberty interest when

she was not offered a name clearing hearing either before or after her contract was not

renewed by the District.

An individual has a liberty interest in his "good name and reputation as it affects

his property interest in continued employment."  *Workman v. Jordan*, 32 F.3d 475, 480

(10th Cir. 1994).  To support a claim for violation of her liberty interests, Plaintiff must

show that the Defendants made statements that: (1) impugned her good name,

reputation, honor, or integrity, (2) were false, (3) occurred in the course of his

termination or foreclosed other employment opportunities, and (4) were published.

*Sandoval v. City of Boulder*, 388 F.3d 1312, 1329 (10th Cir. 2004) (citing *Workman v.

Jordan*, 32 F.3d 475, 481 (10th Cir. 1994)).  "A person who establishes a liberty-interest

deprivation is entitled to a name-clearing hearing."  *Evers v. Regents of University of*

*Colo.*, 509 F.3d 1304, 1308 (10th Cir. 2007).

There is no dispute that Plaintiff was not offered a name-clearing hearing.  Thus, the only issue is whether Plaintiff can show a material dispute as to whether her liberty interests were infringed by the District and/or Hanson.

### a.    Claim against the Board

Plaintiff contends that the Board's May 21, 2009 resolution not renewing her contract violated her liberty interest in her good name and reputation.  (ECF No. 61 at 28.)  The Resolution stated that Plaintiff was a "probationary teacher" and that the Board was not renewing her contract.  (ECF No. 50-2 at 21.)  It did not provide any reason for why the nonrenewal was occurring.  (*Id*.)

Plaintiff argues that anyone reading this resolution "could only believe that the board's action was in response to some terribly serious misconduct of Plaintiff."  (ECF NO. 61 at 28.)  However, regardless of what someone could think or believe, Plaintiff has failed to show that any statement in the Resolution affirmatively impugned her good name, reputation, honor or integrity.  That one could draw a negative inference from an otherwise materially true statement does not invoke a liberty interest.  *See Harjo v. Varnum Public Sch.*, 166 F.3d 347 (10th Cir. 1998) (no liberty interest invoked when plaintiff does not dispute the substantial truth of the party's statements but only the interferences to be drawn therfrom).  Plaintiff has also failed to cite any cases showing that silence with respect to the basis for a termination constitutes a publication that impugns one's good name, reputation, honor, or integrity.  As such, Plaintiff has failed to show a trial-worthy issue of fact as to whether the Board's Resolution deprived her of

a liberty interest and summary judgment in favor of the Board is appropriate.

**b.     Claim against Hanson in his individual capacity**

Plaintiff claims that Hanson impugned her integrity and honor by telling two other area superintendents that Plaintiff had disseminated confidential information to a job applicant.[7]  (ECF No. 61 at 27.)  The evidence shows that Hanson sought advice from two other area superintendents about how to deal with "his principal" who had disseminated "confidential information" that Hanson had revealed to her.  (ECF No. 61-1 at 5-7, 23-25.)  Hanson claims he did not go into detail as to the nature of the allegedly confidential information.  (*Id.*)  He also did not specifically name Plaintiff, but has stated that the two other superintendents knew who his principal was and, in all likelihood, knew that he was talking about Plaintiff.  (*Id.* at 3.)

**1.     Whether a Liberty Interest has been violated**

Despite Hanson's arguments to the contrary, the Court finds that Hanson's comments about Plaintiff sharing confidential information impugn her reputation and integrity.  A school principal is entrusted with confidential information about students, teachers, and other matters on a regular basis.  There is no doubt that the ability to maintain the confidentiality of such information is key to gaining employment as a principal.  Plaintiff has therefore satisfied the first prong of the liberty interest test.

As to whether the Hanson's statements were false, the Court finds that there is a

_____

[7]  Hanson also made similar comments to Board members during e-mail communications about whether Plaintiff should retain her position.  Because these statement are considered internal communications, they were not published as a matter of law.  *See Asbill v. Housing Authority of Choctaw Nation of Oklahoma,* 726 F.2d 1499, 1503 (10th Cir. 1984) (intra-governmental communications are not publication for purposes of an employee's liberty interests).

trial-worthy issue.  The salient question is whether Plaintiff did in fact disseminate confidential information.  If she did not, then Hanson's statements were false for the purposes of Plaintiff's liberty interest claim.  *See Melton v. City of Oklahoma City*, 928 F.2d 920, 926-27 (10th Cir. 1991) ("When a public employer takes action to terminate an employee based upon a public statement of unfounded charges . . . a claim for relief is created.")

Viewing the facts in the light most favorable to Plaintiff, the only thing that Plaintiff told LaMunyon was that Hanson had decided not to interview LaMunyon and she had to abide by that.  The parties dispute whether this constituted confidential information. (Compare Hanson Aff. ¶ 12; Pl.'s Aff. ¶ 13.)  The Court finds that a reasonable juror could find that the information Plaintiff revealed was not confidential. Thus, there is a genuine factual dispute as to whether Hanson's statements to the other superintendents were false.

The Court also finds that there is a trial-worthy issue as to whether Plaintiff has satisfied the third prong of the liberty interests test—that the statements were made in connection with or in the course of Plaintiff's termination.  Hanson made the statements to the other superintendents in the context of seeking their advice about how to deal with Plaintiff's alleged breach of confidence.  The decision not to renew Plaintiff's contract was made by the Board at least a week later.  The publication of the Board's decision regarding Plaintiff's employment did not mention any breach of confidence. Thus, a reasonable juror could find that Hanson's statements were not necessarily made "in the course of" Plaintiff's termination.

However, Hanson admitted that his conversations with the other superintendents

were part of his decision-making process that resulted in him recommending that the

Board not renew Plaintiff's contract.  The Board's vote not to renew Plaintiff's

employment was based solely on Hanson's recommendation; the Board did not

conduct any investigation into the alleged breach of confidence or speak with Plaintiff

about the incident.  Therefore, a reasonable juror could consider Hanson's conversation

with the other superintendents to be part of the course of events that resulted in

Plaintiff's termination.  Accordingly, Plaintiff has shown a trial-worthy dispute as to the

third prong of the liberty interests test.

The final prong requires Plaintiff to show that Hanson's statements were

published.  "Publication," in the context of a liberty interest claim, is accorded its

ordinary meaning "to be made public."  *Bishop v. Wood*, 426 U.S. 341, 348 (1976).

Intra-governmental dissemination of information related to a public employee's

discharge, by itself, falls short of that definition.  *Asbill v. Housing Authority of Choctaw

Nation of Oklahoma*, 726 F.2d 1499, 1503 (10th Cir. 1984).  The Court has some doubt

about whether making statements to two people during private conversations

constitutes publication for purposes of establishing a liberty interest.

However, the Court need not decide this issue because Defendant Hanson

asserts that he is entitled to qualified immunity on Plaintiff's due process claim.  (ECF

No. 50 at 20-21.)  "The doctrine of qualified immunity protects government officials from

liability for civil damages insofar as their conduct does not violate clearly established

statutory or constitutional rights of which a reasonable person would have known."

*Pearson v. Callahan*, 555 U.S. 223 (2009) (quotation omitted).  To resolve qualified

immunity claims, a court must consider two elements:  whether a constitutional violation occurred, and whether the violated right was "clearly established" at the time of the violation.  *Id.* at 815-16.

Therefore, assuming Plaintiff has shown a violation of liberty interests, the Court must determine whether such violation was clearly established.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010) (quotation omitted).  The Supreme Court has held that "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful."  *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (quotations and alteration omitted).  The Tenth Circuit has observed that "[t]he *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional."  *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (quotations omitted).

Applying these principles to the matter at hand, the Court must determine whether Plaintiff has shown that Hanson violated a clearly established liberty interest. Plaintiff has failed to cite a case showing that a reasonable person in Hanson's position would have known that telling the other superintendents during private conversations

that Plaintiff had breached his confidence violated her liberty interest.  The Tenth Circuit

case law suggests that publication must be more than private discussions.  *Custodio v.*

*Parker*, 65 F.3d 178 (10th Cir. 1995).  Courts look for evidence of a "public

pronouncement" of stigmatizing statements.  *See Six v. Henry*, 42 F.3d 582, 585 (10th

Cir. 1994) (finding that because the statements at issue were not made in any public

pronouncement they fell short of constituting publication).  Most cases in which courts

have found that false statements were "published" involve statements made at a public

meeting, in newspaper articles, or in a publically accessible report or file.  *See Palmer*

*v. City of Monticello*, 31 F.3d 1499, 1503-04 (10th Cir. 1994) ("There is no serious

question whether publication actually occurred since some 25 to 30 public observers

were present that the January 25 council meeting, including a newspaper reporter.");

*Whatley v. City of Bartlesville*, 932 F. Supp. 1300, 1304 (N.D Okla. 1996) (statements

made in newspaper articles were published to the public); *DeFries v. Town of*

*Washington*, 875 F. Supp. 756, 764 (W.D. Okla. 1995) (statements made in public

meeting were published); *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d

623, 631-32 (2d Cir. 1996) (publication is satisfied when personnel file is likely to be

disclosed to prospective employers).

Plaintiff fails to cite and the Court has been unable to locate any cases that

would have put a reasonable person on notice that commenting on an employee's

breach of confidence during two private conversations in the context of seeking advice

as to how to handle a personnel issue constitutes publication.  Accordingly, Hanson is

entitled to qualified immunity on Plaintiff's claim.  *See Gonzales v. Duran*, 590 F.3d 855,

860 (10th Cir. 2009) (qualified immunity appropriate when plaintiff failed to establish

that an objectively reasonable person in the defendant's position would have

understood his conduct to violate the plaintiff's clearly established constitutional right).

## C.   Intentional Interference with Contractual Relations

Plaintiff alleges that Hanson intentionally interfered with her contractual

relationship with the District by recommending that the Board rescind its earlier

resolution renewing her employment contract.  (ECF No. 61 at 31-32.)

Colorado recognizes the tort of intentional interference with contractual relations.

*See Watson v. Settlemeyer*, 372 P.2d 453 (Colo. 1962).  The Restatement (Second) of

Torts (Restatement) describes the tort as follows:

> One who intentionally and improperly interferes with the
> performance of a contract (except a contract to marry)
> between another and a third person by inducing or otherwise
> causing the third person not to perform the contract, is
> subject to liability to the other for the pecuniary loss resulting
> to the other from the failure of the third person to perform
> the contract.

Restatement (Second) of Torts § 766 (1977).  "The word 'contract' connotes a promise

creating a duty recognized by law.  The particular agreement must be in force and

effect at the time of the breach that the actor has caused; and if for any reason it is

entirely void, there is no liability for causing its breach. "  *Id*. Comment f.

The Colorado Court of Appeals has held: "An action for interference with the

performance of a contract lies in tort, and an essential element of this tort is the

existence of a contract between the plaintiff and a third party."  *Grimm Constr. Co., Inc.

V. Denver Bd. Of Water Comm'rs.*, 835 P.2d 599, 601 (Colo. App. 1992).  Because, as

24

discussed above, Plaintiff did not have an enforceable contract with the District for the 2009-10 school year, Plaintiff cannot show a trial-worthy dispute as to an essential element of her claim for intentional interference with contractual relations.  Therefore, summary judgment in favor of Hanson is appropriate on this claim as well.

### D.    Promissory Estoppel

Plaintiff contends that, even if she did not have an enforceable contract with the District, she is entitled to proceed to trial on her promissory estoppel claim.  Promissory estoppel is an extension of the basic contract principle that one who makes a promise must be required to keep it.  *Patzer v. City of Loveland*, 80 P.3d 908, 912 (Colo. App. 2003).  In Colorado, promissory estoppel is available as a theory of recovery when breach of contract fails.  *Continental Airlines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo. 1987).  Colorado courts have adopted the definition of promissory estoppel found in the Restatement (Second) of Contracts § 90 (1981).  *Vigoda v. Denver Urban Renewal Authority*, 646 P.2d 900, 905 (Colo. 1982).  Therefore, the elements of a promissory estoppel claim are: (1) the promisor made a promise to the promisee; (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promise; (3) the promisee in fact reasonably relied on the promise to the promisee's detriment; and (4) the promise must be enforced to prevent injustice.  *See Nelson v. Elway*, 908 P.2d 102, 110 (Colo. 1995).

Defendants argue that Plaintiff has not shown that she detrimentally relied on any promise and that, if there was an detrimental reliance, it was not reasonable. (ECF No. 50 at 25-26.)  Reliance can be shown where a party alters his or her position as a

consequence of another's conduct.  *City of Thornton v. Bijou Irrigation Co.*, 926 P.2d 1, 77 n.72 (Colo. 1996).  Reasonable reliance is generally conduct or action that would be reasonable for a prudent person to do or take under the circumstances.  *See Field v. Mans*, 516 U.S. 59, 63 (1995).  "Whether a plaintiff has justifiably relied on a defendant's promise is an issue of law for the trial court."  *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008) (citing *Nelson*, 908 P.2d at 110; *Atsepoyi v. Tandy Corp.*, 51 F.Supp.2d 1120, 1126 (D. Colo. 1999)).

Plaintiff argues that she relied on Hanson's promise that she would be re-employed for the 2009-10 school year by not looking for work elsewhere until after the end of that school year.  However, the record does not support this contention.  As of May 13, 2009, Plaintiff was on notice that her employment contract would not likely be renewed.  Despite this knowledge, Plaintiff failed to seek alternate employment at that time.  (Pl.'s Aff. ¶ 23.)  There is no evidence in the record showing that, had she known before Mary 13, 2009 that her contract would not be renewed, she would have actively pursued alternate employment at that time.

Moreover, to the extent that Plaintiff did detrimentally rely on a promise of continued employment by failing to look for alternate work, the Court questions whether such reliance was reasonable.  But for the requirement that any teacher/administrator contract be in writing, Plaintiff's reliance between April 16, 2009 (the day she was informed of the Board's vote to renew her contract) and May 13, 2009 (when she was placed on administrative leave) would have been reasonable.  However, the Colorado Supreme Court has held that it is "manifestly unreasonable" for a promisee to make a

26

detrimental change based on a conditional representation of the promisor.  *Nelson*, 908 P.2d at 110.  Plaintiff has admitted that she knew the Board had to approve her employment contract and that her employment contract was required to be in writing. (SOF ¶ 11, 14.)  Because she knew that her oral employment contract for the 2009-10 school year was conditional upon it being formalized in writing, it was "manifestly unreasonable" for Plaintiff to rely on the oral promise of continued employment.[8]

As of May 13, 2009, Plaintiff knew that she was not likely to be employed by the District for the 2009-10 school year.  Therefore, any reliance on Plaintiff of continued employment after May 13, 2009 was certainly not reasonable.

In sum, Plaintiff has failed to establish a trial-worthy issue as to whether she reasonably relied to her detriment on any promise by Hanson or the Board that her employment would continue through the 2009-10 school year.  As such, summary judgment in Defendants' favor on this claim is also appropriate.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment is GRANTED with respect to all claims.  All claims in Plaintiff's Complaint are DISMISSED WITH PREJUDICE. The Clerk shall enter judgment in favor of Defendants on all claims.

---

[8]  Plaintiff cites three cases in support of her argument that she has shown a factual dispute as to her promissory estoppel claim.  (ECF No. 61 at 30.)  All three cited cases discuss equitable estoppel; none mention promissory estoppel.  Plaintiff fails to cite any case law indicating that promissory estoppel and equitable estoppel are analogous or that the principles of equitable estoppel apply in promissory estoppel cases.  Accordingly, the Court declines to adopt the reasoning of the cases cited by Plaintiff.

Dated this 5th day of August, 2011.

BY THE COURT:

William J. Martínez
United States District Judge